## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**MICHAEL CAMPBELL,**

     **Petitioner,**

**v.**                                    **Case No. 4:13cv368-RH/CAS**

**JULIE L. JONES, Secretary,**
**Department of Corrections,[1]**

     **Respondent.**

**_____/**

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On June 21, 2013, Petitioner Michael Campbell, proceeding pro se,

filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

ECF No. 1.   On May 15, 2014, Respondent filed an answer, with exhibits.

ECF No. 15.   Petitioner filed a reply on January 7, 2016.   ECF No. 20.

The matter was referred to the undersigned United States Magistrate

Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

Northern District of Florida Local Rule 72.2(B).   After careful consideration

---

[1]The Clerk of Court shall substitute Julie L. Jones, as Secretary of the Florida
Department of Corrections, for Michael D. Crews.   Julie Jones became Secretary on
January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil
Procedure 25(d).

of all issues raised, the undersigned has determined that no evidentiary

hearing is required for disposition of this case.   *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.   For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not

entitled to federal habeas relief and this § 2254 petition should be denied.

## <u>Background and Procedural History</u>

By information filed September 15, 2006, in case number

06CF00822, Second Judicial Circuit, Leon County, the State of Florida

charged Petitioner Michael Campbell, with four counts in connection with

events that occurred between February 28, 2006, and March 1, 2006,

involving victim A.H., a person twelve years of age or older:   (1) sexual

battery with a deadly weapon, a life felony, in violation of sections

784.03(2), 775.087, 794.011(3) and (4)(b), and 794.0115(2)(a), Florida

Statutes; (2) sexual battery with a deadly weapon, a life felony, in violation

of sections 784.03(2), 775.087, 794.011(3) and (4)(b), and 794.0115(2)(a),

Florida Statutes; (3) burglary of a dwelling with a person assaulted, a first

degree felony punishable by life, in violation of section 784.03(2) and

810.02(2)(a) and (b), Florida Statutes; and (4) aggravated battery with a

deadly weapon causing great bodily harm, in violation of sections

784.03(2), 784.045(1)(a)1. and 2., and 775.087, Florida Statutes.   ECF No.

15 Ex. D at 2-3; *see id.* at 1.[1]   Campbell proceeded to a jury trial on

October 18, 2007; he did not testify.   Ex. F at 156-57.   The jury found him

not guilty on Counts 1 and 2, guilty as charged on Count 3 and, on Count 4,

guilty of the lesser included offense of battery.   Ex. D at 78-84; Ex. G at

231-33.   The jury specifically found Campbell had a prior conviction for

battery.   Ex. D at 85; Ex. G at 241-42.   Sentencing took place on January

28, 2008, and in a judgment and sentence rendered that day, the state trial

court adjudicated Campbell guilty and sentenced him, on Count 3, to fifteen

(15) years in prison as a Prison Releasee Reoffender (PRR), with a five (5)

year sentence on Count 4, to run concurrent, and credit for 692 days time

served.   Ex. D at 101-09; Ex. H (sentencing transcript).

Campbell appealed his conviction and sentence to the First District

Court of Appeal (DCA), and the State also appealed the sentence

(contending Campbell should have been sentenced to life in prison), with

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted
with Respondent's Answer, ECF No. 15.

the cases ultimately consolidated and assigned numbers 1D08-601/1D08-870.   Exs. A, B, C, I, J, K, L.   In an opinion issued January 10, 2010, the First DCA affirmed the convictions but reversed and remanded the sentence on Count 3, with directions that the trial court sentence Campbell to life in prison as a PRR.   Ex. M; Campbell v. State, 29 So. 3d 1147 (Fla. 1st DCA 2010).   Campbell moved for rehearing, rehearing en banc, or certification, which the First DCA denied by order on March 10, 2010.   Exs. N (motion) and O (order).   The mandate issued on March 26, 2010.   Exs. P and Q.   On May 3, 2010, the state trial court re-sentenced Campbell to life imprisonment as a PRR.   Ex. V.

Campbell filed a notice to invoke the discretionary jurisdiction of the Florida Supreme Court, Ex. R, and he filed a jurisdictional brief, Ex. S. The State also filed a jurisdictional brief.   Ex. T.   The Florida Supreme Court declined to accept jurisdiction on August 3, 2010.   Ex. U; Campbell v. State, 43 So. 3d 44 (Fla. 2010) (table).

On March 3, 2011, Campbell filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 in the state trial court and raised four grounds.   Ex. W at 1-21.   In an order rendered

March 10, 2011, the state post-conviction trial court denied each of the

issues explaining they "relate to evidentiary rulings made by the Court

during trial" and "are not cognizable issues pursuant to Rule 3.850."   *Id.* at

22.   The court noted, however, that Campbell also mentioned in his motion

a claim of ineffective assistance of counsel (IAC), but the "claim as written

is legally insufficient"; therefore, the court dismissed that portion of the

motion without prejudice, allowing Campbell sixty (60) days to file a legally

sufficient IAC claim.   *Id.*

On May 7, 2011, Campbell filed an amended Rule 3.850 motion, with

two claims.   *Id.* at 24-38.   On June 28, 2011, Campbell filed a supplement

to the motion.   *Id.* at 40-42.   On July 6, 2011, the State filed a response.

*Id.* at 45-49.   The state post-conviction trial court held an evidentiary

hearing on March 9, 2012, during which Campbell was represented by

counsel.   *Id.* at 105-36 (transcript).   At the conclusion of the hearing, the

court denied the motion on the record.   *Id.* at 132-35.   That same day, the

court rendered a written order denying the motion, finding "[b]ased on the

reasons as announced on the record, . . . defendant has failed to show he

received ineffective assistance of counsel or that he was prejudiced by any

alleged deficiency."   *Id.* at 97.   Through counsel, Campbell appealed to

the First DCA and filed an initial brief, assigned case number 1D12-1787.

Ex. X.   The State filed an answer brief, Ex. Y, and Campbell filed a reply,

Ex. Z.   On February 15, 2013, the First DCA per curiam affirmed the case

without a written opinion.   Ex. AA; Campbell v. State, 109 So. 3d 783 (Fla.

1st DCA 2012) (table).   Campbell filed a motion for rehearing, rehearing en

banc, written opinion, or certification, Ex. BB, which the First DCA denied

by order on March 28, 2013, Ex. CC.   The mandate issued on April 15,

2013.   Ex. DD.

As indicated above, Campbell filed his § 2254 petition on June 21,

2013.   ECF No. 1.   He raises four grounds, all alleging ineffective

assistance of counsel (IAC):

> (1)  IAC – Trial counsel "did not object or attempt to keep the
> State's allegations of three prior battery convictions from
> the jury prior to deliberations in violation of the Petitioner's
> 6th and 14th amendment rights."   *Id.* at 4.

> (2)  IAC – Trial counsel failed "to impeach the victim, [A.H.],
> with evidence that she was on psychotropic medication at
> the time of the offense."   *Id.* at 5.

> (3)  IAC – Trial counsel failed to request "the lesser-included
> offense of trespass and assault or battery at trial."   *Id.* at
> 7.

    (4)  IAC – Cumulative.   *Id.* at 8.

Respondent has filed an answer, with exhibits.   ECF No. 15.   Petitioner has

filed a reply.   ECF No. 20.

## Analysis

    Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.   Section 2254(d)

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).   *See, e.g.,* Cullen v. Pinholster, 131 S.Ct. 1388, 1398

(2011); Williams v. Taylor, 529 U.S. 362 (2000); Gill v. Mecusker, 633 F.3d

1272 (11th Cir. 2011).   "This is a 'difficult to meet' and 'highly deferential

standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"   Cullen, 131 S.Ct. at 1398 (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).   This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."   Cullen, 131 S.Ct. at 1388.

For claims of ineffective assistance of counsel (IAC), the U.S. Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687.   To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."   Id. at 688.   To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   Id. at 694.   "A reasonable probability is a probability sufficient

to undermine confidence in the outcome."   *Id.*   For this Court's purposes,

importantly, "[t]he question 'is not whether a federal court believes the state

court's determination' under the Strickland standard 'was incorrect but

whether that determination was unreasonable – a substantially higher

threshold.'"   Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting

Schiro v. Landrigan, 550 U.S. 465, 473 (2007)).   "And, because the

Strickland standard is a general standard, a state court has even more

latitude to reasonably determine that a defendant has not satisfied that

standard."   *Id.*   It is a "doubly deferential judicial review that applies to a

Strickland claim evaluated under the § 2254(d)(1) standard."   *Id.*

## Ground 1:   IAC – Prior Battery Convictions

In his first ground, Petitioner Campbell argues his trial counsel

provided ineffective assistance by not objecting to, or otherwise attempting

to keep out, the State's allegations of three prior battery convictions.   ECF

No. 1 at 4.   Campbell raised this claim as the first ground in his Rule 3.850

motion.   Ex. W at 28-30.   As Respondent indicates, however, Campbell

abandoned this claim at the evidentiary hearing.   *Id.* at 106 (after

Campbell's post-conviction counsel indicates at the hearing that they are

"not moving forward on the first claim," the judge confirms on the record

"you are abandoning the first claim?," and counsel replies, "Yes, Your

Honor").   The state post-conviction trial court specifically found the claim

abandoned.   *Id.* at 132 ("Claim 1 has been abandoned.").   Campbell did

not challenge this determination in the state post-conviction trial court or as

part of his appeal to the First DCA.   *See* Ex. X.   Therefore, Campbell has

not properly exhausted this ground and it is procedurally defaulted.

Campbell has not alleged or shown cause for, and prejudice resulting

from, the default.   *See* Coleman v. Thompson, 501 U.S. 722, 734-35

(1991); O'Sullivan v. Boerckel, 526 U.S. 838, 839-40 (1999); Bailey v.

Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999).   As Respondent

indicates, the limited exception in Martinez v. Ryan, 132 S.Ct. 1309, 1320

(2012), "does not concern attorney errors in other kinds of proceedings,

including appeals from initial-review collateral proceedings."

Regardless, reviewing the merits of Campbell's claim, the language

concerning his prior battery convictions was included in the charging

information to put him on notice that the State would pursue a bifurcated

proceeding for felony battery if the jury returned a conviction for simple

battery.   Ex. W at 46; Ex. E at 5.   Before jury selection started, defense

counsel brought the language to the attention of the trial judge and the

prosecutor agreed the language would not be read to the jury until and unless a bifurcated proceeding took place.   Ex. E at 4-5.   The portion of the Information read to the potential jurors did not include the language about Campbell's prior convictions.   *Id.* at 8-10.   The State did not introduce the Information into evidence during the trial nor did the prosecutor tell or suggest to the jury that Campbell had a prior battery conviction, until the bifurcated portion of the proceeding.   *See* Exs. F and G; Ex. G at 233-42.

Based on the foregoing, Campbell has not shown that the state court's determination of this ground involved an unreasonable application of clearly established federal law or that it based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### Ground 2:   IAC – Impeachment of Victim

In his second ground, Petitioner Campbell argues his trial counsel failed to impeach the victim, A.H., with evidence that she was on psychotropic medications when the offenses occurred.   ECF No. 1 at 5. Campbell raised this claim as the second ground in his Rule 3.850 motion. Ex. W at 30-37.   The state post-conviction trial court denied the claim,

finding the claim had not been proven and further finding:

> I do not find it's either ineffective, it was a strategy decision.   I
> think given the explanation, was a reasonable strategy
> decision.

*Id.* at 134; *see id.* at 121-23 (trial counsel's testimony during evidentiary

hearing that it was his strategic decision not to question victim about her

use of medication).

As with Ground 1, *supra*, Campbell did not challenge on appeal the

state post-conviction trial court's determination of this claim.   *See* Ex. X.

Therefore, Campbell has not properly exhausted this ground and it is

procedurally defaulted.   Campbell has not alleged or shown cause for, and

prejudice resulting from, the default.   *See* Coleman v. Thompson, 501 U.S.

722, 734-35 (1991); O'Sullivan v. Boerckel, 526 U.S. 838, 839-40 (1999);

Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999).

Further, even if this Court considers the claim as exhausted, it lacks

merit.   The record supports the state trial court's finding that defense

counsel made a strategic decision not to question the victim about her use

of medication.   In particular, Campbell's trial counsel testified at the

evidentiary hearing:

> Q   All right.   Let's talk a little bit about Paxil.   Do you
> think now, as you sit here, that the use of the fact that the victim

was on Paxil to explain her lack of memory, would have
advanced your theory of the case?

A   It would have been a hundred percent counter – in my
mind, it would have been counterproductive to my theory.   It
would have been counter-intuitive – it was counter-intuitive to
me to try to help the victim explain her memory loss, when I
was saying her memory loss was fabricated and her memory
loss was convenient.   Because when she was testifying, she
would remember large amounts of the details of the crime, and
then all of a sudden, when it didn't suit her she would say, well I
had a memory lapse here, I had a memory lapse there.

So to me, she was even so vivid, she said that she never
got a cake.   She said that the defendant's mother was
supposed to bake her a red velvet cake.   And she said, I'm still
waiting for that red velvet cake now.   This is what she said
during the trial.   So to me, the memory thing was – I was
attacking that – fake memory loss.   So I wouldn't want to
validate it, make it look credible, by bringing up the fact that
there as some anti – not only that, it creates sympathy for the
victim.   Because from what I understand, Paxil is an anti-
depressant.

Q   So you don't want the jury to know that she's on
medication for depression?

A   Not during a rape trial.

Q   And you don't want the jury to know that she's on
medication that might explain her loss of memory?

A   No way.   My whole theory was to attack her
credibility.

Q   Did you have any concerns about the Paxil theory
maybe offending the jury?

     A   No.  I mean, I just didn't – I was trying to – I was – my whole thing was trying to attack her credibility.  And the fact that she's taking medication for anti-depression – and Paxil has a lot of different side effects.  It certainly didn't have any effect on her.  I mean, I took her deposition in the case.  She had no problem remembering details of everything that happened, so I didn't think – her memory loss, to me, was not credible.  When she just all of a sudden says, I don't remember something, and then says it's because – I don't want to help her out and say, wasn't it true you were taking Paxil.  To me, that would be something you would bring up saying, do you take medication for – that has memory problems, or something like that.  So that would be – to me, that would be what you would do to enhance her credibility, not something that I would do.

Ex. W at 121-23.

Campbell has not shown that the state court's adjudication of this ground involved an unreasonable application of clearly established federal law or that it based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

### Ground 3:   IAC – Lesser Included Offense

In his third ground, Petitioner Campbell argues trial counsel failed to request the lesser-included offense of trespass and assault or battery. ECF No. 1 at 7.  Campbell raised this claim as the third ground in his Rule 3.850 motion and attached a copy of the verdict form for Count (3).  Ex. W at 40-44.  The state post-conviction trial court denied the claim, making the following findings:

[This claim] presents an interesting issue.   Mr. Remland [defense counsel] essentially has fallen on his sword here today, and claimed that he was ineffective.   I don't accept that testimony, I don't find that he was ineffective.   Gian-Grasso[ v. State, 899 So. 2d 392 (Fla. 4th DCA 2005)], if it was just Gian-Grasso standing alone, I would say it's dicta; it was a summary denial of a post-conviction motion, and I would dismiss it as dicta.

But there has been, and I'm sure that the reason we're here is because the 1st DCA recently, in one of Judge Lewis's cases – and I can't remember the name of it at this point in time – turned down the jury request to be able to convict of two offenses out of a single count of the information[, Spencer v. State, 71 So. 3d 901 (Fla. 1st DCA 2011)].   And then the jury ultimately convicted of the robbery instead of the two.   Frankly, that case came as a complete surprise to me.   I've been involved in handling criminal matters since January 1979, and I was totally shocked by the 1st DCA opinion.   I still don't accept that it's correct, frankly, although they're the 1st DCA and they get to make the determination.

I think it is contrary to double-jeopardy provisions to convict someone of two offenses out of a single count of an information.   I don't know whether that was presented to the 1st DCA or not, but that was a recent opinion.   I guess it brought to our attention something that I believe that most of us involved in the practice of criminal law for years would not have believed was correct law.   Now we know it is the law, but I don't think that it is ineffective assistance of counsel for an attorney to believe otherwise.   We'll see whether ultimately that ends up being the law of the State of Florida.   Hopefully that matter will be presented to the Supreme Court for some clarification.

I also do not find . . . that there was prejudice.   The jury was given the option of not finding a burglary, but finding a trespass.   They chose not to convict of trespass.   Frankly, I

don't understand the theory of why, if they had an assault and a
trespass, that that would have changed the jury's thinking.   I
think that's gross speculation on our part.   I think there is no
reasonable probability that that would have changed the
outcome of the case.   If they were not convinced of intent, the
jury instruction tells them to find him not guilty of a burglary.   If
that was what they found, they should have found him guilty of
a trespass.   There are legions of cases that say we don't
presume that a jury has ignored the lawful instructions of the
Court.   The lawful instructions of the Court would have had to
have been ignored for the result to have occurred that has been
proposed here.   So [this claim], although an interesting issue, I
find is not proven, and will be denied.

*Id.* at 132-34.   This ruling, affirmed on appeal without opinion, is entitled to

deference and review is limited to the record before the state court.   *See*

Cullen, 131 S.Ct. at 1388.

As the state post-conviction judge found, trial counsel cannot be

ineffective for essentially failing to anticipate a change in the law.

Respondent explains that the then-recent First DCA opinion to which the

post-conviction court referred was issued August 23, 2011, reversing and

remanding for a new trial, with rehearing denied on October 19, 2011.

*See* Spencer v. State, 71 So. 3d 901 (Fla. 1st DCA 2011); ECF No. 15 at

16.   Campbell's trial occurred in October 2007.

Further, in Spencer and Gian-Grasso, the other case referred to in

the post-conviction trial court, the juries had returned with either questions

about possible lesser offenses or a verdict form with more than one choice

selected.   *See* <u>Spencer</u>, 71 So. 3d at 902; <u>Gian-Grasso</u>, 899 So. 2d at

392.   In contrast, the jury in Campbell's case did not ask questions about

lessers or indicate an intent or preference to find Campbell guilty of

something other than the options given.   *See* <u>Barriner v. Sec'y, Dep't of</u>

<u>Corr.</u>, 604 F. App'x 801, 807 (11th Cir. 2015) (reversing district court's

grant of habeas relief for IAC and explaining, among other things, "the fact

that the jury's question included the trespass-of-a-structure offense and

omitted any burglary offense implied that the jurors had eliminated burglary

as a possibility" and "[e]ven if it might seem likely in hindsight that the jurors

would settle on an offense other than the one listed in their question,

<u>Strickland</u>'s test forbids that kind of second-guessing").

In addition, during the evidentiary hearing, trial counsel testified

regarding the lessers requested as part of his defense theory and trial

strategy:

> Q   Did you request a lesser-included instruction on Count
> 3 of trespass with person assaulted?
>
> A   Trespass.
>
> Q   You requested the trespass.   Did you request a –
>
> A   Trespass alone.

Q   Did you request a dual instruction of trespass with assault?

A   I did not.

Q   Okay.   Why didn't you do that?

A   I wasn't aware that that was a possible lesser.

Q   Have you done that since then?

A   Yes, I've done it a number of times since then.

. . . .

Q   Mr. Remland, so you would not say that any trial strategy went into the decision not to include that as a lesser-included?

A   No, I mean when it comes to trial strategy, lessers is part of your trial strategy if it advances your theory of the case. And my theory of the case was, that they knew each other, that it was a domestic situation, that it was a fight perhaps, at most; it was not a rape.   And there was reasonable doubt as to consent, as far as entry into the residence.   And also, there was reasonable doubt as to what the intent was, because I was arguing it was just a fight.   So I think that trespass and battery, those two – trespass, battery and assault were lessers that I felt advanced my theory of the case:   That it was more of a fight than it was a burglary.

Q   Okay.

A   Or sexual battery.

Q   Did you request any instruction in Count 3 that would adequately have presented the jury with an instruction on your

theory of the case?

A   Okay.   When we came to Count 3, which was a burglary with assault or burglary-with-battery-type situation, I knew that there were possible lessers that would advance my theory.   One of them was trespass, another one was battery, another one was assault.   However, since I was asking for battery as a lesser in Count 1, Count 2 and also in Count 3, I didn't think through or see the necessity for a battery lesser. And had I asked for a battery lesser, in addition to trespass, the jury would have only been able to return a verdict as to one of the lessers.

In other words, A, B, C, D or E.   And had I had trespass as A or B and battery as another, they couldn't have found him guilty of both.   They could have only found him guilty of one. And so I figured I'd have the battery count covered by another count, and I threw the trespass in there under Count 3.   And then later on after the trial, I discovered this concept of a dual lesser.   In other words, I could have asked for trespass and battery as a single lesser, a single lesser.

In my mind – I would have asked for that, because that would have allowed me to have the jury find him guilty of both; and it would have been a higher form of lesser.   It wouldn't have been just like a trespass or just like a battery.   It would have been a hybrid lesser or a dual lesser that would have been consistent with my theory of the case; and I would have definitely asked for it.   Because I didn't know it existed at that time, which I've discovered that Gian-Grasso back in '05 allowed that type of a lesser.   But I didn't discover that until after the trial.   That's what I have to say about that whole issue.

Q   Okay.   So you would say that none of the proposed instructions allowed the jury to find both a trespass or burglary and an assault?

A   Well, that's a question of interpretation, because the way I was looking at it at the time, honestly, I was thinking it did. But I was thinking, well they had the battery under another count, and they had the trespass under another count; so they could put them together and say, okay we'll find him guilty of a trespass and battery.   Because they were still – trespass and battery were still on the table for the jury.

However, I didn't think that as to the burglary count, because the jury – when the Judge reads the instructions he says, consider each count separately and the evidence as it relates to that count.   If they do that, and they look at the burglary count with the – the battery or burglary count with the assault as a separate charge – they couldn't find him guilty of both, they could only find him guilty of one.   So my thinking is, well they're going to – they may decide to go with the highest charge, which was the burglary.

Because there wasn't just a trespass or just a battery, it was more than that.   It was a – the charge was a combined charge.   It wasn't just one charge, it was two charges in one. But there wasn't a two-charge-in-one lesser, and that's the part that I think was unique about this case.   Because the charge was – it had two charges in one.   It had burglary and it had an assault.   And there wasn't a lesser that covered both of those elements in that count.   Yes, it was covered under other counts, but I was – that's what I was thinking, I could cover those points on other counts.   But I didn't know that I could actually get a lesser that would advance my theory as to those two counts in burglary.

Ex. W at 111-15.   When questioned on cross-examination, counsel

testified that he did not argue that a trespass had occurred in this case and

that his theory was that Campbell was invited in and there was no burglary.

Ex. W at 120.   In particular, counsel testified:

Q   Did you argue for a trespass in this case, in your closing argument?

A   Did you argue for a trespass?

Q   Right.   Did you argue –

A   I don't think I argued for a trespass, no.

Q   Wasn't it your theory that this defendant was invited in, and that there was no burglary and that they should acquit on that count?

A   Yes, I think so.   But then again, you know, you never know what a jury is thinking.   And I was trying to argue also, that the evidence was insufficient to prove a burglary.   And so trespass was given by the Court, because it was a lesser, an appropriate lesser for burglary.

Q   But sometimes you argue specifically for a lesser?

A   Right.

Q   Like in this case, you did argue for a battery?

A   Right.

Q   But you didn't argue specifically for a trespass?

A   I guess not.

*Id.* at 120-21.

Indeed, Campbell cannot establish prejudice.   On Count 3, the trial judge instructed the jury on three lesser-included offenses:   burglary of a dwelling; burglary; and trespass.   Ex. D at 70.   The jury found Campbell

guilty as charged of burglary of a dwelling with person assaulted.   Ex. D at

82.   Thus, Campbell's contention that the jury would have found him guilty

of a dual lesser of trespass and assault or battery appears speculative,

because the jury rejected the lesser-included offenses.   *See, e.g.*,

Barriner, 604 F. App'x at 807 (explaining "[n]either trespass of a structure

nor assault contains that entry-with-intent element" required by burglary).

As Respondent further points out, the jury found Campbell guilty of the

lesser offense of battery on Count 4, and also found him not guilty on

Counts 1 and 2, the more serious charges of sexual battery with a deadly

weapon.   Ex. W at 78-84.

Campbell has not shown that the state court's adjudication of this

ground involved an unreasonable application of clearly established federal

law or that it based on an unreasonable determination of the facts.   *See* 28

U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### **Ground 4:   IAC – Cumulative**

In his fourth ground, Petitioner Campbell alleges cumulative IAC.

The Eleventh Circuit has rejected such an argument in a § 2254

proceeding.   *See* Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565

(11th Cir. 2009) (explaining that "[t]he Supreme Court has not directly

addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim" but "the Supreme Court has held, in the context of an ineffective assistance of counsel claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt" (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984))).   Moreover, as each of the individual grounds fail, this ground likewise fails.

## Conclusion

Based on the foregoing, Petitioner Michael Campbell is not entitled to federal habeas relief.   The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.   *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the amended § 2254 petition (ECF No. 1).   It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.   The Clerk shall substitute Julie L. Jones for Michael

D. Crews as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on May 6, 2016.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this report and recommendation, a party may serve and file specific, written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**